HERTLEIN ET AL., EXRS., APPELLANTS, *v.* FROHMAN, APPELLEE.

(Decided December 4, 1939.)

*Messrs. Davies & Eshner* and *Mr. Russell A. Ramsey,* for appellants.

*Messrs. Flynn, Frohman, Buckingham, Py & Kruse,* for appellee.

LLOYD, J.   Aletha Hertlein, now deceased, was a daughter of J. J. Dauch of The Hinde-Dauch Paper Company of Sandusky, and a sister-in-law of Sidney Frohman.   Some time in the latter part of March or early in April, 1929, Mr. and Mrs. Hertlein sought Mr. Frohman's advice and talked with him concerning investments by Mrs. Hertlein that might prove profitable, in consequence of which she invested in certain syndicate stocks recommended by Mr. Frohman.   This apparently resulted so satisfactorily to Mrs. Hertlein that she decided further to invest in the syndicate stocks that Frohman would recommend, and this resulted in the following letter to her from Mr. Frohman, *viz.:*

"The Hinde & Dauch Paper Co.
"Sandusky, Ohio.

"April 9th, 1929

"Mrs. Aletha D. Hertlein
"E. Jefferson Street
"Sandusky, Ohio

"Dear Aletha:

"Yesterday I received the return application for participation in the Steel and Iron Syndicate, same having been accepted by the managers, Otis & Company of New York. It is in the amount of $50,000. In accordance with my conversation with you and providing you are still agreeable, we will effectuate the partnership arrangement beginning with this deal and will include such subsequent ones as seem desirable.

"To confirm the understanding, you agree that I shall have full discretion and unrestricted powers and from time to time and in such manner, and at such prices and on such terms and in such amounts as is deemed expedient to purchase, sell, exchange, deal in, dispose of shares of stock, voting trust certificates, subscriptions, warrants and enter into agreements of any kind, with any person concerning the same, which from time to time I may deem in the interest of our arrangement. Let us say that this arrangement may be terminated in two years' time or any time previous to that at my discretion. You are to advance such sum or sums not in excess of $50,000, the same to be used in all the transactions covered by this understanding, and the profits after any expense for interest, commissions, stamp tax, etc., shall be equally apportioned between us. The losses, if any, upon the expiration of this arrangement shall also be equally divided between us. In other words, you are advancing the capital requirements and I am to use my best endeavors to handle the same profitably. In the event of profit or in the

event of loss, each of such shall participate on the same basis.

"I shall not be expected to warrant or be subject to a liability with respect to any issue, form, validity, genuineness, assessability, or value of or title to any stock, voting trust, certificates, warrants or receipts, nor for anything whatsoever except want of good faith, nor be under any obligation either' expressed or implied.

"I hope I have stated clearly what was understood in our two conferences on the subject and will be glad to go into more detail, if I have omitted anything.

"Sincerely yours
"[Signed] Sidney Frohman."

Between April 1, 1929, and November 5, 1931, Mrs. Hertlein advanced the sum of $68,678.99 for the agreed-upon purposes. The condition of the stock market in October 1929 resulted in the liquidation thereafter of the syndicates to which payments had been made on subscriptions thereto. The purpose of this agreement being thus ended, Mrs. Hertlein employed a Cleveland attorney to conclude the business relations created by the contract and also to obtain payment of the amount due her from Mr. Frohman for stock of The Hinde-Dauch Paper Company purchased by him in 1924. Later she employed Louis A. Bloomfield, also a Cleveland attorney, to represent her in accomplishing these purposes, by giving to him the following:

"Power of Attorney
"Know all men by these presents that I, Aletha D. Hertlein, of Sandusky, Erie county, Ohio, do hereby appoint Louis A. Bloomfield of Cleveland, Cuyahoga county, Ohio, my attorney in fact, for me and in my name and stead, in all matters involving, concerning or having any connection with all promissory notes owned by me upon which Mr. Sidney Frohman of Sandusky, Erie county, Ohio, is the obligor, and all monies

owing to me by the said Sidney Frohman other than those evidenced by promissory notes and all rights of every nature whatsoever which I may have against the said Sidney Frohman or claims or demands growing out of or in connection with our financial transactions and/or in connection with any stocks and/or securities which may be due from the said Sidney Frohman, hereby revoking any former powers of attorney and/or authorizations in connection with the above-described matters.

"Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or proper to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof.

"In witness whereof I have hereto set my hand this 27th day of November, 1934.

"Aletha D. Hertlein.

"Signed in the presence of:
"Helen Mansfield
"Norma E. Knoblock."

Conferences and negotiations between Bloomfield and Frohman resulted in their going to Toledo on January 21, 1935, where, at The Toledo Trust Company, Frohman gave his check thereon for $342,944 to Bloomfield, as attorney for Mrs. Hertlein, this being the amount of the principal and interest due and owing to Mrs. Hertlein for The Hinde-Dauch Paper Company stock. Returning to Sandusky, Frohman and Bloomfield went to the office of the paper company, where Bloomfield suggested and urged that they also settle and conclude the questions and differences arising out of the investment venture with respect to which, somewhat, extensive negotiations and conferences between them had theretofore been had. The settlement finally

consummated was evidenced by the following agreement:

"Promissory Note.

"$31,500                                          January 21, 1935.

"One year after date, for value received, I promise to pay to Aletha D. Hertlein, at 818 Guardian Building, Cleveland, Ohio, thirty-one thousand five hundred dollars ($31,500). This obligation shall be subject, however, to a credit of fifty per cent (50 per cent) of the net proceeds of the sale of the following securities:

"2 shares The Cliffs Corp. Common V. T. C.

"73 shares Gulf States Steel Co. Common

"24 shares Inalda Steel Co. Capital stock

"2 shares National Steel Corp. Capital Stock

"13 shares National Steel Corp. Common Stock Purchase Warrant

"43 shares Republic Steel Corp. Common

"19 shares Wheeling Steel Corp. Common

"78 shares Youngstown Sheet & Tube Co. Common

"360 shares Abitibi Power & Paper Common

"196 shares Beauharnois Power Corporation 'A' Common

"52 shares International Paper & Power Company 'A' Common

"72 shares MacLaren Power & Paper Co. Common

"44 shares St. Lawrence Corporation, Ltd. Common

"176 Shares Union Gas Co. of Canada Common

"23 shares United Light & Power 'B' Common

"2290 shares Bagdad Copper Corp.

"It is understood and agreed that the right to sell any part or all of the securities set forth herein shall be at the discretion of the maker and L. A. Bloomfield, attorney for Aletha D. Hertlein, Cleveland, Ohio. This discretion may be exercised within a year from date hereof, or after January 21, 1936. The consent of Mr. Sidney Frohman or L. A. Bloomfield, shall not, however, be unreasonably withheld.

"Sidney Frohman

"December 2nd, 1936.

"Paid in full thirty-one thousand five hundred dollars ($31,500) this 2nd day of December, 1936.

"L. A. Bloomfield."

The securities enumerated therein are those received upon liquidation of the syndicates in which investments were made. Mrs. Hertlein died in a Cleveland hospital on August 29, 1935, leaving a last will and testament wherein Lawrence H. Hertlein, her husband, and a Mr. Riddleberger were named as executors. They chose Mr. Davies of Cleveland to act as their attorney, and the first eight of the note-enumerated securities are now in their possession. Mrs. Hertlein had, however, on November 27, 1934, authorized The Cleveland Trust Company, where they were deposited in trust, to deliver them "to my attorney Louis A. Bloomfield." The other securities enumerated in the note were at the time of its execution in the possession of Mr. Frohman. On January 27, 1936, Frohman by letter to Bloomfield, referring to the note of January 21, 1935, suggesting that market conditions were not favorable to a then sale of the securities, requested Mr. Bloomfield "to consent to continuing the matter in its present status to a more favorable market."

On February 1, 1936, Bloomfield, by letter to Frohman, acquiesced in this suggestion, sending a copy of his letter, together with a copy of the Frohman note, to the Hertlein executors.

On December 2, 1936, Mr. Frohman paid the agreed-upon $31,500 to Mr. Bloomfield and consented to the sale of all of the securities enumerated in the promissory note contract, subject to the receipt by him of fifty per cent of the proceeds of the sale thereof. Upon payment of the note, Frohman delivered to Bloomfield the securities in his possession, to the sale of which by Bloomfield he had consented, and Bloomfield acknowl-

edged their receipt by letter dated December 5, 1936. In this letter Bloomfield also wrote:

"In view of the present market conditions and your payment of the Hertlein note, I am confirming our agreement to sell all of the securities set forth in the promissory note, dated January 21, 1935, at this time."

On this same date, December 5, 1936, Frohman wrote to the executors that he and Bloomfield had agreed that the securities listed in the note, "in view of the present market conditions should be sold at this time and I hereby request that they be sold on Thursday, December 10, 1936," and that he had delivered to Bloomfield, for this purpose, the note-enumerated securities in his possession.

In answer to this letter the executors, by their attorney Davies, by letter dated December 8, 1936, wrote that they did "not recognize and do hereby repudiate any alleged settlement of this matter claimed to have been made with Mr. Louis Bloomfield," stating in detail their reasons therefor. Mr. Bloomfield testified that he notified Mr. Frohman to deliver to him the securities he held and also notified the executors to deliver the securities held by them to certain designated brokers for sale, as had been agreed upon by Frohman and himself. He also testified that after its execution, "we held the note in our safe at our office, but I told Mrs. Hertlein about it and she knew about it. The note was paid at our office to me. I notified Mr. Davies, whom I knew represented the executors, depositing the money at the National City Bank until I knew what to do with it, how to distribute it."

Theretofore, beginning by letter dated January 3, 1936, there had been some correspondence between Davies and Frohman as to the Hertlein matter, Frohman referring Davies to Bloomfield. Davies on January 11, 1936, wrote Frohman that he had seen Bloomfield and had examined "the agreement in note form" and that the executors "did not accept said settlement,

as of course the death of Mrs. Hertlein revokes any authority of Mr. Bloomfield in the matter'' and ''request that you give to me a detailed accounting of the trust,'' enumerating at length the specific information demanded.

On December 7, 1936, the executors filed a petition in the Court of Common Pleas alleging in detail the grievances of which they complained, and prayed that Frohman be required to account for the period covered by the contract and pay to them the sum that the court found due from him to the Aletha Hertlein estate. The Court of Common Pleas, finding for Frohman, dismissed the petition of the executors and rendered judgment in favor of Frohman. From this judgment the executors appeal to this court on questions of law and fact.

It is contended by the executors that the note agreement entered into by Frohman with Bloomfield under his power of attorney from Mrs. Hertlein is voidable because of mutual mistake of fact in that it was based on the assumption that the total capital investment of Mrs. Hertlein was $63,000 whereas her capital contributions, made prior to the settlement, were $68,678; and since whatever authority was conferred upon Bloomfield by the Hertlein power of attorney was instantaneously revoked by her death, the thereafter-attempted consummation by him of the note contract with Frohman was nugatory and could not be considered as an accord and satisfaction or as in any respect binding upon the executors of the Hertlein estate as a settlement of the matters in controversy.

Although this is stated by the executors in some fourteen different ways in their brief, the court understands the foregoing to be the contentions urged. This appeal being on questions of law and fact, the court will pass, without comment beyond stating it, the fifteenth contention that ''the trial court committed prejudicial error * * * by delaying rendering the de-

cision in this cause more than a year after the same had been heard and submitted to him."

It may be said, however, that the trial judge gave attentive consideration to the questions presented, as is evidenced by his thirty-five typewritten pages of conclusions of fact and law filed in the Court of Common Pleas.

Although the fact seems now to be that $63,000 was, as is claimed, less than the entire capital investment of Mrs. Hertlein in the venture entered into by herself and Mr. Frohman, the evidence shows that Bloomfield acted upon the information furnished to him by Mrs. Hertlein, whom he asked "to assemble her information on the amounts that she either paid or had paid into this investment transaction and" Bloomfield said that "the amount which Mrs. Hertlein gave me was approximately twice thirty-one five." In answer to a question as to whether he at any time had any controversy with Mr. Frohman over the amount, he testified that "there was some difference between his figure and mine. By amount, I mean the figure I got from Mrs. Hertlein" which was $63,179, and he later testified that in his discussions with Mr. Frohman as to the amount of this capital investment, his recollection was that there existed a difference of "as much as $2,000 either way. May have been a little more * * * . There was some difference, some question of a credit and a back payment" and that "the amount had not been agreed upon" prior to the final meeting and discussion in Mr. Frohman's office in Sandusky on January 21, 1935.

An employee of The Hinde-Dauch Paper Company, who was present prior to and when the January 21, 1935, note was executed, also testified that "there was a difference of opinion between Mr. Frohman and Mr. Bloomfield as to the amount advanced" and that $63,000 "was the final result that they arrived at * * * there were three or four differences and one was with respect to the amount."

There had been many conferences and discussions between Bloomfield and Frohman for six months or a year prior to January 21, 1935, concerning a settlement of the matters growing out of the investment agreement, during which time several proposals of settlement were suggested by Bloomfield and several agreements in note form were prepared by him, all of which were rejected by Frohman.

Frohman testified that "when he asked me what my knowledge was as to the amount of money put into this partnership, I told him my information was that it was around $63,000 and he said, 'Well, that is approximately correct.' I didn't at that time, nor even shortly after, ever try to confirm the amount."

Mr. Frohman also said: "Mr. Bloomfield's approach was that we have this thing pretty well cleaned up, why not settle the small matter remaining? My answer was that the condition of the financial market did not admit clearing up the large amount of securities that were held and that I didn't want to make the settlement while the market was so low. Well, he pressed for settlement, and finally, I concluded with him, that, well all right, let's assume then that the amount owing or the amount of that partnership is $63,000 and if you will agree with me that—to take a note for one year for $31,500 and further agree that you won't press the sale of those shares, we can make this, we can just complete this entire picture, to which he agreed and that note that you referred to, was the result of that conclusion."

He testified that Mr. Bloomfield then said: "This is approximately correct, and I will let it go at that."

It would seem, therefore, that Bloomfield, the *alter ego* of Mrs. Hertlein, and Frohman, after differing as to the amount of the capital investment, compromised on $63,000. So Bloomfield himself states.

A mistake, to be mutual, must be just that, and if the court were to adopt the assumption that Bloomfield

acted on mistaken information, the fact appears to be that Frohman was willing to settle the controverted question of amount on the basis of $63,000 and not otherwise, and that so far as he was concerned he was not conscious of, nor was he concerned with whether the exact amount was more or less than the stipulated sum. It was one of the conditions of the settlement in which he was willing to acquiesce and to which Mrs. Hertlein, through her attorney, was willing to and did accede. Frohman, so far as the evidence discloses, was not then aware that the amount advanced by Mrs. Hertlein was in excess of $63,000. He acted honestly and in good faith. If there was any mistake, it was Mrs. Hertlein's mistake, not Mr. Frohman's. The important and all-inclusive inquiry is as to the legal effect of the note agreement itself—whether it was given and accepted as a settlement and termination of all of the differences growing out of the agreement with Mrs. Hertlein, in the performance of which Frohman had made the investments contemplated and authorized thereby.

Frohman, by finally agreeing to the terms and conditions proposed by Mr. Bloomfield, whose authority to act for Mrs. Hertlein was as broad and inclusive as words could provide, relinquished the exclusive rights and privileges accorded to him by his contract with Mrs. Hertlein, and she secured thereby control of the rights and privileges thus surrendered, which certainly was a consideration for the note obligation executed by Frohman and which, as appears to the court, became in and of itself a legal compromise of the theretofore disputed and undetermined questions arising out of the stock investment contract.

This was not an agreement for the payment of a liquidated indebtedness, but an agreement depending upon many conflicting and to-be-adjusted differences resulting finally in the note agreement, which was a give-and-take proposition—a compromise.

And this being so, the fact of Mrs. Hertlein's death before the ultimate consummation could not change or affect its binding purpose and effect. It follows that the petition of the appellant executors should be dismissed and a judgment in favor of Frohman for his costs herein expended be awarded.

*Petition dismissed.*

CARPENTER and OVERMYER, JJ., concur.